1  GEORGE G. BENETATOS  [SBN: 54986]
   LAW OFFICE OF GEORGE G. BENETATOS
2  244 California Street, Suite 300
   San Francisco, California  94111
3  Telephone:    (415) 398-2296
   Facsimile:    (415) 398-2290
4
   Attorney for Dattaprasanna G. Nadkarni
5

**FILED**

MAY 2 7 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

6

7

8                  UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                      SAN JOSE DIVISION

11  DARSHANA NADKARNI,                )   No. C07-04834 JF
    an individual,                    )
12                                    )   **DEFENDANT'S MEMORANDUM**
                  Plaintiff,          )   **OF POINTS AND AUTHORITIES IN**
13  vs.                               )   **OPPOSITION TO PLAINTIFF'S**
                                      )   **MOTION FOR TRO**
14  DATTAPRASANNA G. NADKARNI,        )
    an individual,                    )   Date:  June 13, 2008
15                                    )   Time:  9:00 a.m.
                  Defendant.          )   Judge: Hon. Jeremy D. Fogle
16  _____  )

17  **I.    DEFENDANT REQUESTS THIS COURT FIRST MAKE EVIDENTIARY**
        **RULINGS ON DEFENDANT'S OBJECTIONS TO PLAINTIFF'S**
18       **DECLARATION**

19       Attached to this memorandum are Defendant's objections to substantial portions of

20  Plaintiff's declaration in support of her motion for a TRO.  Defendant respectfully requests this

21  court first rule on Defendant's evidentiary objections.  If Defendant's objections are sustained,

22  there will be insufficient evidence to grant Plaintiff's motion for a TRO.  For the convenience of

23  the court, attached to Defendant's objections is a copy of Plaintiff's declaration with the

24  objected-portions highlighted in yellow and underscored.

25

26

27

28

1    **II.    PLAINTIFF'S DECLARATION AND ATTACHED EXHIBITS ARE
        INSUFFICIENT EVIDENCE TO SUPPORT ISSUANCE OF A TRO**

2

3         **A.    THE LEGAL STANDARD FOR GRANTING A TRO**

4         To qualify for a TRO, Plaintiff must show either (1) a combination of probable success

5    on the merits and the possibility of irreparable harm, or (2) that serious questions are raised and

6    the balance of hardships tip sharply in the moving party's favor. *Dumas v. Gommerman,* 865

7    F.2d 1093, 1095 (9th Cir. 1989); *Apple Computer Inc. v. Formula Int'l, Inc.,* 725 F.2d 521, 525

8    (9th Cir. 1984).

9         **B.    PLAINTIFF IS NOT LIKELY TO PREVAIL**

10        The principal factual dispute in this case is who created the disputed

11   penmealine@yahoo.com email account ("email account" or "account"). Plaintiff asserts she

12   created it solely for her exclusive use "after separation" from Defendant. [Plaintiff Declaration

13   ("Plf. Dec.") at 2:2-3, 4:16-17.] Defendant contends he created the account on August 24, 2001,

14   for joint access and use by Plaintiff and Defendant, with the knowledge and agreement of

15   Plaintiff. [Defendant Declaration ("Def. Dec.") at 2:15-19; 2:25-27, 3:6-8.] Defendant further

16   contends he and Plaintiff jointly selected the password with the knowledge and agreement of

17   each other and they mutually agreed each could use the password to access the account. [Def.

18   Dec. at 2:23-37.] Defendant also contends he always had the right to access the email account,

19   including during 2007, when Plaintiff unilaterally changed the password. [Def. Dec. at 3:6-8.]

20   Defendant further contends the email account and all the information in it, is his property, jointly

21   owned with Plaintiff; Plaintiff wrongfully denied Defendant access to the account, including all

22   the information in the account, when she unilaterally and wrongfully changed the password

23   during or about August 14, 2007,  without giving Defendant the new password.

24        Plaintiff's only supporting evidence that she created the email account is her Exhibit A,

25   the "Yahoo! Account Management Tool." However, Exhibit A does not disclose who created

26   the account; it only discloses the account creation date, "Fri Aug 24 04:45:08 2001 GMT."

27   Other information about the email account such as "Full Name," "Address," "Birthday," etc. can

28   be changed at anytime after the account is created.  Apparently, Plaintiff changed this other

1  information when she changed, among other things, the residential address from the Saratoga

2  address to the Galli Court address in San Jose, and when she changed the birth date and gender to

3  her birth date and gender. Obviously Exhibit A alone does not make the case that Plaintiff is

4  likely to prevail.

5       The only other evidence concerning who created the email account are Plaintiff's and

6  Defendant's respective declarations. If the court sustains Defendant's objections to the objected-

7  portions of Plaintiff's declaration, this court need not go any further—there is simply no evidence

8  in the unobjected-to portion of Plaintiff's declaration to justify issuance of the TRO, and

9  Plaintiff's motion can be denied.

10      However, even if the court considers the whole of Plaintiff's declaration, it still is not

11 sufficient, credible evidence that Plaintiff is likely is to prevail. Her testimony should be

12 compared to Defendant's detailed testimony showing that he created the email account for joint

13 access and use, with the knowledge and agreement of Plaintiff. In contrast, Plaintiff merely

14 asserts she created the email account for her exclusive use. [Plf. Dec. at 2:2..] She does not

15 testify as to the circumstances of the account's creation; nor does she offer any testimony or other

16 evidence to explain how Defendant obtained the account password. For example, Plaintiff does

17 not dispute Defendant's access to the account in 2002 [See Defendant's Exhibit 1 to his

18 Declaration.] Also, most of her testimony consists of assertions, which are often argumentative,

19 without foundation, based on inadmissible hearsay, and on unfounded legal opinions. Compare

20 her testimony to Defendant's detailed factual testimony, which includes the reason for creating

21 the joint email account, the mechanics for its creation, and the mechanics of the joint selection of

22 the password. In view of the foregoing, Defendant's detailed declaration is far more credible

23 than Plaintiff's; such being the case, Defendant is the one likely to prevail, not Plaintiff.

24      **C.    PLAINTIFF IS NOT AT RISK TO SUFFER "THREATENED OR
            ACTUAL RUIN TO HER REPUTATION IN ... HER BUSINESS AND
25          CULTURAL COMMUNITY"**

26

27      Plaintiff claims she was "shocked to discover that Defendant ... accessed [her] email

28 account...." [Plf. Dec. at 3:23-24.] She also claims she is "quite disturbed" that Defendant, in

1  effect, is threatening to disclose "email accounts which could be considered inflammatory and
2  sensitive to certain others." [Plf. Dec. at 4:2-4.] She also claims, in effect, she is directly
3  threatened with blackmail demands, and the possibility of email revelations that will harm her
4  family and business relationships, and harm her reputation within her cultural community. [Plf.
5  Dec. at 4:5-10, 4:15-16, 4:19-24.]

6       The foregoing claims are not credible, in part, because Plaintiff has waited for substantial
7  periods of time to seek TRO protection. Plaintiff first discovered the use of the "inflammatory"
8  and "private" emails on or about August 31, 2007. [Plf. Dec. at 3:18-26.] She waited 20 days
9  until September 20, 2007 to file her first application for a TRO before this court. It was denied
10 by this court on September 25, 2007. [See Plaintiff's Memorandum at 3:26-4:4.] Plaintiff then
11 waited another 22 days until October 17, 2007 to obtain a TRO from the Santa Clara County
12 Superior Court, Family Law Division. [See Plaintiff's Memorandum at 4:5-6.] Hearing on the
13 TRO was originally set for December 12, 2007; however, by stipulation the hearing was
14 continued to March 5, 2008. The continuance was stipulated to by Defendant in part to
15 accommodate Defendant's attorney's unavailability in December due to his hip replacement
16 surgery, and to give the parties time to discuss global settlement before a mediator. Mediation
17 occurred in late February 2008, but without success. Following mediation the TRO hearing
18 occurred on March 5, 2008. The TRO was dismissed by the Santa Clara County family court
19 during the first minutes of the hearing on the ground no domestic violence was alleged. [See
20 Plaintiff's Memorandum at 4:10-13; see also transcript of proceedings attached as Exhibit A to
21 Mr. Usoz's Declaration.] Following the March 5, 2008 dismissal, Plaintiff waited 65 days until
22 May 9, 2008 to apply for this court a second time for a TRO; the TRO will not be heard for
23 another 36 days, until June 13, 2008.

24      The foregoing delays strongly suggest Plaintiff is not concerned about public disclosure
25 of the emails; instead she is using these repeated TRO applications to harass Defendant, and wear
26 him out with the stress and attorney fees which he suffers each time Plaintiff takes Defendant to
27 court demanding TRO protection. The delays further suggest that Plaintiff's claims of urgency,
28

1   fear, threats, and so forth are grossly exaggerated; hence, they and are not sufficient evidence of

2   irreparable harm to justify a TRO.

3           In addition to the foregoing, Plaintiff's claims of fear, threats, harm to reputation, and so

4   on, are not credible because, for reasons stated in Defendant's evidentiary objections, such claims

5   are based on testimony without foundation, argumentative testimony, inadmissible hearsay

6   testimony, and legal opinion without foundation.

7           In view of the foregoing, Defendant respectfully requests the motion for a TRO be denied

8   on the grounds that Plaintiff's delays in seeking TRO protection, and Plaintiff's objectionable

9   testimony, do not make a credible case that she is at risk to suffer irreparable harm without TRO

10  protection.

11          **D.      THE "BALANCE OF HARDSHIPS" DOES NOT TIP SHARPLY IN
                      PLAINTIFF'S FAVOR; IT TIPS SHARPLY IN DEFENDANT'S FAVOR**

12

13          For reasons stated above, Plaintiff's claims of risk of embarrassment and harm to

14  personal and business relationships, are not credible.  In contrast, the emails accessed by

15  Defendant which are included in Plaintiff's sealed Exhibits B and C, include information relevant

16  to Defendant's recently filed claim for defamation and wrongful termination, which includes

17  Plaintiff as a named defendant.  The emails include disclosure of Plaintiff's friendship with a

18  prominent member of the Bay Area Indian community.  There is credible circumstantial evidence

19  that Plaintiff and her friend caused Defendant to be terminated from his job as Executive

20  Director of the Indian Community Center in Milpitas.

21          In addition, several other emails include Plaintiff's admissions that during early 2007,

22  Plaintiff left California for several weeks in India without arranging for proper adult care and

23  supervision of the parties' children.  This evidence was relevant to the pending custody dispute in

24  family court.  These emails also include evidence that Plaintiff concealed from the family law

25  court evidence concerning possession of substantial assets.  Concealment of the information

26  affected the family court's decision to substantially increase Defendant's child support payments.

27  To be sure, the issues of custody, visitation and support were resolved by a recent order of the

28  family court; however access to these emails is still necessary to Defendant because of the

1  possible use of the emails in the pending defamation and wrongful termination case; also, such

2  emails may be relevant in future family law proceedings, including a pending June 4, 2008

3  hearing concerning Plaintiff's claims for attorney fees and costs.

4      For the foregoing reasons Defendant respectfully requests this court find that the "balance

5  of hardships" tip sharply in Defendant's favor, not in Plaintiff's.

6  **III.    CONCLUSION**

7      Defendant Mr. Nadkarni respectfully requests this court deny Plaintiff's request for a

8  TRO, for the following reasons:

9      First:  Defendant's evidentiary objections to Plaintiff's declaration should be sustained,

10 because nearly all of Plaintiff's testimony is argumentative, without foundation, not based on

11 personal knowledge, hearsay, and legal opinion without foundation.

12     Second:  Plaintiff is not likely to prevail on the underlying case because she has

13 insufficient credible evidence to support her claim that she created the penmealine@yahoo.com

14 email account for her exclusive use;

15     Third:  Defendant's testimony regarding the reasons, circumstances and mechanics for

16 creating the penmealine@yahoo.com email account is substantially more detailed and credible

17 than Plaintiff's,  suggesting he is more likely to prevail at trial.

18     Fourth:  Plaintiff's several substantial delays in seeking TRO protection from this court

19 and from the Santa Clara County Superior Court, strongly suggest her claim of irreparable harm

20 is grossly exaggerated and not credible;

21     Fifth:  The balance of hardships tips sharply in Defendant's favor not to issue the TRO,

22 because the disputed emails contain material evidence relevant to Defendant's pending

23 defamation, wrongful termination and family law claims, and possible  future family law claims.

24                              LAW OFFICE OF GEORGE G. BENETATOS

25

26 Dated: May ___, 2008

27                              GEORGE G. BENETATOS
                               Attorney for Dattaprasanna G. Nadkarni

28

1                                    PROOF OF SERVICE

2              The undersigned hereby declares/certifies as follows:

3        _____ I am:  a resident of or employed in the City and County of San Francisco, California,
         over 18 years of age, and not a party to the within cause, whose business address is:
4        244 California Street, Suite 300, San Francisco, CA  94111.

5          X      I am:  an active member of the State Bar of California, whose business address is:
         244 California Street, Suite 300, San Francisco, CA  94111.
6

7    On the date hereon I served the following document(s) described as:

8    1.        DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN
               OPPOSITION TO PLAINTIFF'S MOTION FOR TRO
9
10   2.        OBJECTIONS TO AND MOTION TO STRIKE THE DECLARATION OF *DARSHANA
               NADKARNI* IN SUPPORT OF HER MOTION FOR TEMPORARY RESTRAINING
               ORDER
11
12   3.        DECLARATION OF DEFENDANT  DATTAPRASANNA G. NADKARNI  IN
               OPPOSITION TO PLAINTIFF'S APPLICATION FOR TRO

13
     on the interested parties in this action by placing a true copy thereof enclosed in sealed envelopes
14   addressed as follows:

15   Stephen J. Usoz, Esq.
     Hogan Holmes & Usoz, LLP
16   333 W. Santa Clara St., Suite 800
     San Jose, CA 95113
17   *fax:  408.292.7611

18
       X      (BY MAIL) I placed such envelopes with postage thereon fully prepaid in the United
19   States mail at San Francisco, California.

20   _____ (BY PERSONAL SERVICE) I personally delivered such envelopes to the above
     addresses.
21
       X      (BY FAX) I transmitted by facsimile copying machine a true copy thereof to the fax
22   number(s) as shown above as *fax for facsimile copy transmission of the parties/persons/firms
     listed above.
23
           Executed on May 22, 2008, at San Francisco, California.
24
       X      (STATE) I declare under penalty of perjury under the laws of the State of California that
25   the above is true and correct.

26     X      (FEDERAL) I declare that I am employed in the office of a member of the bar of this
     court at whose direction the service was made.
27

28      GEORGE G. BENETATOS
            PRINT NAME                              SIGNATURE

1   GEORGE G. BENETATOS  [SBN: 54986]
    LAW OFFICE OF GEORGE G. BENETATOS
2   244 California Street, Suite 300
    San Francisco, California 94111
3   Telephone:    (415) 398-2296
    Facsimile:    (415) 398-2290
4
    Attorney for Dattaprasanna G. Nadkarni
5

6

7

8                   UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                      SAN JOSE DIVISION

11  DARSHANA NADKARNI,                  )   No. C07-04834 JF
    an individual,                      )
12                                      )   **OBJECTIONS TO AND MOTION TO**
            Plaintiff,                  )   **STRIKE THE DECLARATION OF**
13  vs.                                 )   *DARSHANA NADKARNI* **IN SUPPORT**
                                        )   **OF HER MOTION FOR TEMPORARY**
14  DATTAPRASANNA G. NADKARNI,          )   **RESTRAINING ORDER**
    an individual,                      )
15                                      )   Date:   June 13, 2008
            Defendant.                  )   Time:   9:00 a.m.
16  _____  )   Judge: Hon. Jeremy D. Fogle

17          Respondent *Dattaprasanna G. Nadkarni* ("Defendant") objects to and moves to strike the

18  following portions of the foregoing declaration of *Darshana Nadkarni* ("Plaintiff"):

19          1.      Declaration at 1:23-2:4:   "...and upon information and belief, and as to those

20  items, I believe them to be true."

21          Objection: Testimony based upon "information and belief" is inadmissible because it is

22  not based on the witness's personal knowledge, and it is based on inadmissible hearsay.

23  FEC §§ 602 and 802.

24          2.      Declaration at 1:28-2:1:   "...there have been continuing contentious issues

25  throughout the family law proceedings caused by Defendant."

26          Objection: Argumentative by use of the words "contentious" and "caused by Defendant."

27  Argumentative statements are inadmissible. *Seidenberg v. George* (1946) 76 CA2d 306, 309.

28

1    3.    Declaration at 2:17-20: "A particular note is that the third-party customer

2 companies and the potential job candidates and their information is predominantly outside of the

3 State of California, which translates into interstate commerce;"

4    First Objection: Argumentative by use of the words "A particular note. . ."

5 Argumentative statements are inadmissible.  *Seidenberg v. George* (1946) 76 CA2d 306, 309.

6    Second Objection: Legal opinion without foundation by use of the words "...which

7 translates into interstate commerce." FEC §§ 702, 703; *Marriage of Heggie* (2002) 99 CA4th

8 28, 30.

9    4.    Declaration at 3:11-13: "Occasionally, sensitive information has been revealed

10 within these communications by third parties, with "off the record" comments. This information

11 is public knowledge."

12    First Objection: Argumentative by use of the word "sensitive." Argumentative

13 statements are inadmissible. *Seidenberg v. George* (1946) 76 CA2d 306, 309.

14    Second Objection: Unintelligible; "...has been revealed within these communications by

15 third parties" is unintelligible, hence irrelevant. FEC §§ 401, 403.

16    5.    Declaration at 4:5-10: "...Given that the information was in my email account, I

17 believe this statement is a direct threat that unless I succumb to his demands in the family law

18 case, he will interfere and directly impact my business relationship. I also believe he will file my

19 personal emails in the family court action in order to embarrass me, and to injure my

20 relationships with my family members and third-parties including professional clients."

21    First Objection: Lay opinions without foundation; FEC §§ 602, 701. The foregoing are

22 mere assertions without foundation. There is no testimony from Plaintiff describing how

23 revelation of the emails will "interfere and directly impact [Plaintiff's] business relationship";

24 nor is there any testimony describing how Plaintiff will be "embarrassed," or how her

25 "relationships with [her] family members and ... professional clients" will be "injured."  Without

26 a foundation to support such assertions, Plaintiff's lay opinions are inadmissible and should be

27 stricken. FEC §§ 602, 701.

28

1     <u>Second Objection</u>: Vague, ambiguous and argumentative. The foregoing assertions of

2 "interference," "directly impact," "embarrassment" and "injured relationships" are amorphous

3 and argumentative. Argumentative statements are inadmissible. *Seidenberg v. George* (1946) 76

4 CA2d 306, 309.

5     6.     <u>Declaration at 4:12</u>: "illegally."

6     <u>Objection</u>: Legal opinion without foundation. FEC §§ 702, 703; *Marriage of Heggie*

7 (2002) 99 CA4th 28, 30.

8     7.     <u>Declaration at 4:15-18</u>: "Defendant has harassed and cyber-stalked me in an effort

9 to destroy my business reputation and intimidate me."

10     <u>First Objection</u>: Argumentative statement with no factual foundation set forth in the

11 declaration. The declaration does not specifically describe the alleged harassment as defined by

12 FL § 6320 and CCP § 527.6(b); nor does it state what effect, if any, the alleged "harassment" has

13 on petitioner's business reputation; it does not state why the alleged conduct "intimidates"

14 Petitioner within the meaning of Family Law §6320 or CCP §527.6(b); and it does not state what

15 personal knowledge, if any, Petitioner has to support the foregoing assertion; FEC §602.

16     <u>Second Objection</u>: Argumentative and ambiguous by use of the words "cyber-stalked";

17 EC §765(a); argumentative statements are inadmissible. *Seidenberg v. George* (1946) 76 CA2d

18 306, 309.

19     8.     <u>Declaration at 4:16-18</u>: "Defendant has admitted to committing the crime(s) in his

20 own declaration and has utilized the information obtained by accessing my account to gain his

21 objectives."

22     <u>First Objection</u>: "Defendant has admitted to committing the crimes..." is a legal opinion

23 without foundation. FEC §§ 702, 703; *Marriage of Heggie* (2002) 99 CA4th 28, 30.

24     <u>Second Objection</u>: Vague, ambiguous and argumentative by use of the words "...has

25 utilized the information obtained by accessing my account <u>to gain his objectives</u>." [Emphasis

26 added.] Such words are irrelevant. FEC §§ 401, 403; argumentative statements are inadmissible.

27 *Seidenberg v. George* (1946) 76 CA2d 306, 309.

28

1    <u>Third Objection</u>: Argumentative by use of the words "[d]efendant has admitted to

2    committing the crimes..."; what has been "admitted" is argumentative, hence inadmissible.

3    *Seidenberg v. George* (1946) 76 CA2d 306, 309.

4    9.    <u>Declaration at 4:19-21</u>: "Defendant has told others that he knew which social

5    events I would be attending within the past three months. I was unable to determine the

6    methodology as to how Defendant became aware of my schedule until learning of his access to

7    my email account."

8    <u>First Objection</u>: No foundation for the statement "Defendant has told others that he knew

9    which social events I would be attending ...." FEC §602.

10    <u>Second Objection</u>: Hearsay in that Plaintiff is referencing statements by third parties.

11    FEC §802.

12    <u>Third Objection</u>: No testimony regarding Plaintiff's personal knowledge to support the

13    foregoing assertion. FEC §602.

14    10.    <u>Declaration at 4:23-24</u>: "His knowledge of my attendance at these activities has

15    caused me fear for my safety based on his prior treatment of me during our marriage."

16    <u>First Objection</u>: The sentence, including the words "...based on his prior treatment of

17    me..." is vague, ambiguous and argumentative. FEC §§ 401, 403; argumentative statements are

18    inadmissible. *Seidenberg v. George* (1946) 76 CA2d 306, 309.

19    <u>Second Objection</u>: No testimony in Plaintiff's declaration that Plaintiff has personal

20    knowledge regarding "[Defendant's] knowledge of [Plaintiff's] attendance at these activities...."

21    FEC §602.

22    11.    <u>Declaration at 4:21-23</u>: "While Defendant was charged and convicted in 1999 for

23    perpetrating domestic violence against me, domestic violence has been present throughout our

24    marriage."

25    <u>First Objection</u>: No foundation; Petitioner's statements are mere assertions, with no

26    testimony from Petitioner describing the alleged "abuse" and "beatings." FEC §602.

27    <u>Second Objection</u>: "Domestic violence" is vague, ambiguous and argumentative; there is

28    no description or testimony of the alleged "domestic violence." Argumentative statements are

1    inadmissible. *Seidenberg v. George* (1946) 76 CA2d 306, 309; vague and ambiguous statements

2    are irrelevant. FEC §§ 401, 403.

3        Third Objection: "... domestic violence has been present throughout our marriage" is a

4    mere assertion without foundation; FEC §602; it is also vague, ambiguous and argumentative;

5    there is no description or testimony of the alleged "domestic violence." Argumentative

6    statements are inadmissible. *Seidenberg v. George* (1946) 76 CA2d 306, 309; vague and

7    ambiguous statements are irrelevant. FEC §§ 401, 403.

8        Fourth Objection: No foundation. No testimony referencing Petitioner's personal

9    knowledge of the alleged "conviction." FEC §602.

10        Fifth Objection: No foundation; whether there was a "conviction" is a legal opinion.

11   FEC §§ 702, 703; *Marriage of Heggie* (2002) 99 CA4th 28, 30.

12        Sixth Objection: Irrelevant to Plaintiff's request for a restraining order concerning her

13   emails, and her claims that Defendant allegedly accessed her email account, in violation of 28

14   USC §2701 *et seq.*; FEC §§ 401, 403.

15        12.    Declaration at 5:2-4: "The exhibits containing my emails and filed by respondent

16   with this Court have been obtained illegally, and the methods used to obtain these exhibits have

17   violated State and Federal statutes."

18        Objection: Legal opinion without foundation. FEC §§ 702, 703; *Marriage of Heggie*

19   (2002) 99 CA4th 28, 30.

20        13.    Declaration at 5:4-25:   [This part of Petitioner's declaration merely states a series

21   of requests for relief.]

22        Objection: This is not testimony relevant to whether a restraining order should be given;

23   it is merely the Petitioner's statement regarding the relief requested. Therefore, it should be

24   stricken as irrelevant. [FEC §§ 401, 403.] It should also be stricken as legal argument without

25   expert foundation, not a declaration of facts. *Marriage of Heggie* (2002) 99 CA4th 28, 30;

26   FEC §§ 602, 702, 703.

27

28

1       14.    <u>Declaration at 5:6-7</u>: "The sealing of the exhibits for this motion is narrowly

2  tailored to accomplish the request made for the permanent sealing of the exhibits now on file

3  with this court."

4       <u>Objection</u>: This is a mere argumentative assertion; as such it is inadmissible. *Seidenberg*

5  *v. George* (1946) 76 CA2d 306, 309.

6                             Respectfully submitted

7

8  Dated:  May 22, 2008

9                             George G. Benetatos
                                Attorney for Dattaprasanna G. Nadkarni

1  STEPHEN J. USOZ, SB# 189095
   LESLIE HOLMES, SB# 192608
2  YAMIN T. MAUNG, SB# 253538
   HOGAN HOLMES & USOZ LLP
3  333 West Santa Clara St., Suite 800
   San Jose, California 95113
4  Telephone: 408-292-7600
5  Fax: 408-292-7611

6

7  Attorneys for Plaintiff
   DARSHANA NADKARNI

8                        UNITED STATES DISTRICT COURT

9                      NORTHERN DISTRICT OF CALIFORNIA

10                            SAN JOSE DIVISION

11

12  DARSHANA NADKARNI,                    CASE NO.  C07-04834 JF
    an individual,
13                                         DECLARATION OF DARSHANA
            Plaintiff,                     NADKARNI IN SUPPORT OF PLAINTIFF'S
14      v.                                 MOTION FOR A TEMPORARY
                                           RESTRAINING ORDER
15  DATTAPRASANNA G. NADKARNI,
    an individual,
16
17          Defendant.

18

19

20

21

22  I, Darshana Nadkarni, declare as follows:

23  1.     I make this declaration based upon my own personal knowledge and upon information

24  and belief, and as to those matters; I believe them to be true.  If called as a witness, I could

25  competently testify as to the matters set forth herein.

26  2.     I am the Plaintiff in this action and was previously married to the Defendant,

27  Dattaprasanna G. Nadkarni. I filed for divorce from the Defendant on June 21, 2002.  While the

28  divorce has been final since May 2005, there have been continuing contentious issues

                                            1

1  throughout the family law proceedings caused by Defendant.

2  3.   After separation, I created a Yahoo! email account: penmealine@yahoo.com. I have

3  used this email account for personal and professional business. A true and correct copy of the

4  Yahoo! Account Management Tool for this account is attached hereto as Exhibit A. This email

5  account has been used all times herein referred to for the following purposes:

6       a.  To communicate with my family law attorney, Tammara Bloom, on this case. I

7       discussed strategies and my vulnerabilities during the time period herein referred

8       to;

9       b.  To communicate professionally with clients. I am a consultant, providing both

10      executive search services and employment counseling. Accordingly, my email

11      included highly sensitive third-party information. I facilitate trainings developed

12      by parent companies as a sub-contractor using proprietary information developed

13      by the parent companies. This information was contained in and stored on my

14      email account at all times herein referred to. Furthermore, information of special

15      and customized workshops I had developed for companies upon their request

16      that addressed their particular challenges was contained in this email account,

17      both in storage and email communication. A particular note is that the third-

18      party customer companies and the potential job candidates and their information

19      is predominantly outside of the State of California, which translates into

20      interstate commerce;

21      c.  To store my financial records as my financial statements normally did go into my

22      email correspondence from the financial institutions;

23      d.  To store the medical record information on my mother's medical condition and

24      communicate on her medical condition with family members;

25      e.  To store my mother's financial information, including tax records, account

26      numbers, social security number, details of her holdings including my mother's

27      trust, and related third party references for these institutions and trust;

28      f.  To communicate with third parties regarding my mother's financial holdings,

2

including investment strategies with financial advisors. This includes detailed

discussions between my family members and the trustees on the proper division

of assets from the inheritance left by my father in an offshore trust for the family.

g. To communicate with third parties on recruitment of candidates for job positions

with parent companies, including but not limited to proprietary information from

the companies and personal resumes from candidates with confidential

identification information. My recruitment business includes my working with

potential job candidates who have stressed in their communication with me

that their looking for other opportunities is to remain a closely guarded secret. I

also have completed detailed reference searches on potential candidates utilizing

this email account. Occasionally, sensitive information has been revealed within

these communications by third parties, with "off the record" comments. This

information is public knowledge.

h. To communicate in the form of a report to the potential employer on my own

impression regarding a candidate. This report would not be public knowledge.

4.    I never authorized or gave permission to Defendant or third parties for the use of the

account or allowed them access to the password for this account.

5.    In late August 2007, I became aware that my husband had filed with Santa Clara

Superior Court his Objections to the Recommended Order of the Court Per an Assessment and

he attached my personal email messages from my Yahoo! Account to that document.

Attached is Exhibit "B" to this declaration a true and correct copy of the Objections,

*"FILED CONDITIONALLY UNDER SEAL PENDING COURT ORDER"*.

I was shocked to discover that Defendant had accessed my email account and that he

had attached my email messages to this document.  On August 31, 2007, he filed a

Supplemental Declaration attaching more email from my account, including communications

with my family law attorney, Tammara Bloom.

Attached as Exhibit "C" to this Declaration is a true and correct copy of the

Supplemental Declaration filed by my ex-husband *"FILED CONDITIONALLY UNDER*

3

1   *SEAL PENDING COURT ORDER".*

2   6.      I am also quite disturbed by Defendant's statement in the declaration: **"that I have**

3   **procured more evidence from the above-mentioned email accounts, which could be**

4   **considered inflammatory and sensitive to certain others. I have no intention to share these**

5   **emails other than as evidence in future legal proceedings."** [Bold emphasis added].  Given

6   that the information was in my email account, I believe this statement is a direct threat that

7   unless I succumb to his demands in the family law case, he will interfere and directly impact my

8   business relationships.  I also believe he will file my personal emails in the family court action

9   in order to embarrass me, and to injure my relationships with my family members and third-

10  parties, including professional clients.

11  7.      I am further aware and informed that Defendant has already made use of information

12  illegally obtained through his access to my email account by issuing subpoenas in this case

13  naming third parties, which were referenced only in my email account.  These third parties

14  include business contacts and trustees of my mother's trust.

15  8.      Defendant has harassed and cyber-stalked me in an effort to destroy my business

16  reputation and intimidate me.  Defendant has admitted to committing the crime(s) in his own

17  declaration and has utilized the information obtained by accessing my account to gain his

18  objectives.

19  9.      Defendant has told others that he knew which social events I would be attending within

20  the past three months.  I was unable to determine the methodology as to how Defendant became

21  aware of my schedule until learning of his access to my email account.  While Defendant was

22  charged and convicted in 1999 for perpetrating domestic violence against me, domestic violence

23  has been present throughout our marriage.  His knowledge of my attendance at these activities

24  has caused me fear for my safety based on his prior treatment of me during our marriage.

25  10.     On or about March 24, 2008, Defendant called me to inform me that if I "Googled" my

26  name, I would find all of my private and personal emails posted on the internet. He claimed

27  that it was because my attorneys had filed this lawsuit against him. I spent most of the day and

28  night looking online to see if this was true, and worrying about the ramifications of pursuing

4

1 | this lawsuit.

2 | 11.    The exhibits containing my email and filed by Defendant with this Court have been

3 | obtained illegally, and the methods used to obtain these exhibits have violated State and Federal

4 | statutes. I request that the Court seal these particular exhibits. Should the Defendant attempt to

5 | file additional email that is mine, I would request an ongoing order that seals those email

6 | exhibits also. This request is narrowly tailored to seal only my email should it be submitted to

7 | this Court for filing.

8 | 12.    I request that the Defendant be ordered to pay for all my associated attorney fees and

9 | costs for this particular issue.

10 | 13.    A temporary restraining order for personal conduct restriction pending a hearing on

11 | the permanent five year restraining order is requested to protect me from Defendant as follows:

12 |     (1)    Defendant shall not engage in any behavior that has been or could be
13 | enjoined such as blackmail, slander, stalking, threatening, harassing, and disturbing the
peace of the Plaintiff or third parties through the use of personal information accessed
14 | through Plaintiff's email;

15 |     (2)    Defendant is prohibited from using, delivering, distributing, printing,
copying, or disclosing the message or content of Plaintiff's email account to others;
16 |

17 |     (3)    Defendant shall deliver to Plaintiff's attorney within three (3) days of service
of this order all electronically downloaded media accessed from Plaintiff's email
18 | account.

19 |     (4)    Defendant shall deliver to Plaintiff's attorney within (3) business days of
service of this order all hardcopies of any and all information accessed through
20 | Plaintiff's email account;

21 |

22 |     (5)    Defendant shall deliver to Plaintiff's attorney within three (3) business days of
service of this order the identities of all third parties to whom Defendant has provided
23 | copies of or access to information obtained through Plaintiff's email account;

24 |     (6)    Defendant or third parties under his supervision, shall not access, attempt to
access, or otherwise interfere with Plaintiff's internet service provider accounts,
25 | including but not limited to email accounts.

26 | ://///////

27 | ///////

28 | ://////

5

CLARATION OF PLAINTIFF IN SUPPORT
OTION FOR A TRO                                        C07-04834 JF

I Declare Under Penalty of Perjury under that laws of the United States that the foregoing is true and correct and that this was executed on this 8th day of May, 2008, at San Jose, California.

*Darshana Vashadh*
DARSHANA NADKARNI
Plaintiff

1
1
1
1
1
1
1
1
18
19
20
21
22
23
24
25
26
27
28

DECLARATION OF PLAINTIFF IN SUPPORT
OTION FOR A TRO

C07-04834 JF

GEORGE G. BENETATOS  [SBN: 54986]
LAW OFFICE OF GEORGE G. BENETATOS
244 California Street, Suite 300
San Francisco, California  94111
Telephone:     (415) 398-2296
Facsimile:     (415) 398-2290

Attorney for Defendant Dattaprasanna G. Nadkarni

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DARSHANA NADKARNI,<br>an individual,<br><br>                    Plaintiff,<br><br>vs.<br><br>DATTAPRASANNA G. NADKARNI,<br>an individual,<br><br>                    Defendant. | No. C07-04834 JF<br><br>**DECLARATION OF DEFENDANT<br>DATTAPRASANNA G. NADKARNI  IN<br>OPPOSITION TO PLAINTIFF'S<br>APPLICATION FOR TRO**<br><br>Date:    June 13, 2008<br>Time:   9:00 a.m.<br>Judge:  Hon. Jeremy D. Fogle |

I, Dattaprasanna G. Nadkarni, declare as follows:

1.     I am the Defendant in the foregoing action.

**I CREATED THE DISPUTED EMAIL ACCOUNT DURING OUR
MARRIAGE FOR JOINT ACCESS AND USE BY BOTH OF US, WITH
THE KNOWLEDGE AND AGREEMENT OF PLAINTIFF**

2.     During our marriage until separation in July 2003, I was more competent at home than Plaintiff concerning use of the computer and the internet.  At home I handled most of the routine computer related matters such as network connections, software updates, anti-virus protection, emails and the passwords used by both of us to access emails.

3.     Until about 1998 we used exclusively the "Microsoft Outlook Express" program, which would download all emails from our Netcom, Pacbell or SBCglobal email accounts automatically on to our computer hard drive from the internet.  Both of us traveled frequently. During 2000-2001 I commuted to Los Angeles for more than a year.  Our frequent traveling

1 made it difficult to access our emails if they were sitting on the Outlook program on our home
2 desktop computer.

3     4.     Around 1998, a new generation of free email services were launched by Yahoo!,
4 Hotmail and later Gmail. These "ASP" emails made it possible for anyone to access their emails
5 securely from any computer anywhere in the world, using only the user id and password – and
6 without having to download or save the emails on the hard drive of the computer used to access
7 those emails. Because of the new service, on behalf of both of us, and with Plaintiff's agreement,
8 I registered us for several email accounts over several years. The user IDs I registered us on
9 included: dnadkarni@ix.netcom.com; datta.nadkarni@sbcglobal.net, dnadkarni@sbcglobal.net,
10 dn9449@yahoo.com, dn111@hotmail.com, wd_darshana@hotmail.com, cmo9449@yahoo.com,
11 dnadkarn@yahoo.com, penmealine@yahoo.com, etc. Also for ease of remembering the
12 passwords for each user id and for each email account, there were several sets or combination of
13 words we routinely used as passwords for these email accounts. Some examples include
14 "zany123", "Neeshaneil", and "Shantavaria."

15     5.     At page 2, line 2, of Plaintiff's Declaration, she states as follows: "After
16 separation, I created a Yahoo! Email account: penmealine@yahoo.com." This statement is false.
17 On August 24, 2001, I created this penmealine@yahoo.com email account at Plaintiff's request.
18 The August 24, 2001 date is memorialized in Plaintiff's Exhibit A, at page 4; the document title
19 is "Yahoo! Account Management Tool." She told me she wanted a specific email account for us
20 to communicate with each other, principally concerning the children.

21     6.     At that time Plaintiff traveled frequently for her work, often outside of California.
22 I created this email account so that Plaintiff could have easy and frequent access to it while
23 traveling. When I created this email account the password that was eventually selected was
24 "zanymail." I do not remember if the password was selected by me, by Plaintiff, or jointly;
25 however, I do remember that we both accepted this password, and began using the password
26 immediately jointly for access and communication through this email account. I also remember
27 that both of us knew and accepted that each of us knew the password "zanymail."

28

7.     Plaintiff began using this email account to send emails to me at my separate email account. I was able to recognize the message easily and quickly as a message from her concerning the children. I would send my reply directly to this email account. Use of this email account for communication concerning the children and for matters related to our divorce continued for several years.

8.     Up until August 2007, I always had access to this email account with the knowledge and agreement of Plaintiff, through our joint knowledge of the password "zanymail", which began when I created this email account.[1] When Plaintiff discovered that I had used several relevant emails from the account as exhibits in our family law case, she unilaterally changed the password. I no longer have access to this email account.

## I HAD GOOD CAUSE TO ACCESS TO THE JOINT EMAIL ACCOUNT DURING 2007

9.     Concerning my recent 2007 access to this penmealine@yahoo.com email account, the circumstances were as follows: During late March 2007, I was tardy in mailing my child support check to Plaintiff. I attended to this through my bank, and I informed Plaintiff by voicemail that the check would be received by her soon. For several days I received no response. This was unusual because Plaintiff always contacted me concerning payment of child support, particularly if payment was tardy.

10.    I also wanted to contact Plaintiff to arrange for visitation of the children, especially my daughter whose birthday was April 9[h]. Again, there was no reply from Plaintiff. I spoke with my children by phone to contact Plaintiff; I received evasive replies. I emailed Plaintiff's attorney, Tamara Bloom, concerning her whereabouts; again, I received an evasive reply.

11.    At this point, I accessed the penmealine@yahoo.com email account to see if it disclosed Plaintiff's whereabouts. I discovered through several emails she was in India with her mother. I was alarmed because I believed my children were abandoned by Plaintiff with no proper adult supervision, especially during the evenings.

---

[1]     Exhibit 1 is an example of such access which occurred on 12 Nov 2002.

7.     Plaintiff began using this email account to send emails to me at my separate email account. I was able to recognize the message easily and quickly as a message from her concerning the children. I would send my reply directly to this email account. Use of this email account for communication concerning the children and for matters related to our divorce continued for several years.

8.     Up until August 2007, I always had access to this email account with the knowledge and agreement of Plaintiff, through our joint knowledge of the password "zanymail", which began when I created this email account.[1] When Plaintiff discovered that I had used several relevant emails from the account as exhibits in our family law case, she unilaterally changed the password. I no longer have access to this email account.

## I HAD GOOD CAUSE TO ACCESS TO THE JOINT EMAIL ACCOUNT DURING 2007

9.     Concerning my recent 2007 access to this penmealine@yahoo.com email account, the circumstances were as follows: During late March 2007, I was tardy in mailing my child support check to Plaintiff. I attended to this through my bank, and I informed Plaintiff by voicemail that the check would be received by her soon. For several days I received no response. This was unusual because Plaintiff always contacted me concerning payment of child support, particularly if payment was tardy.

10.    I also wanted to contact Plaintiff to arrange for visitation of the children, especially my daughter whose birthday was April 9th. Again, there was no reply from Plaintiff. I spoke with my children by phone to contact Plaintiff; I received evasive replies. I emailed Plaintiff's attorney, Tamara Bloom, concerning her whereabouts; again, I received an evasive reply.

11.    At this point, I accessed the penmealine@yahoo.com email account to see if it disclosed Plaintiff's whereabouts. I discovered through several emails she was in India with her mother. I was alarmed because I believed my children were abandoned by Plaintiff with no proper adult supervision, especially during the evenings.

---

[1]    Exhibit 1 is an example of such access which occurred on 6/14/02.

**THE ACCESSED EMAILS INCLUDE RELEVANT INFORMATION
CONCERNING THE FAMILY LAW CASE AND MY CASE FOR
WRONGFUL TERMINATION AND DEFAMATION**

12.     The emails I accessed included admissions by Plaintiff which were relevant to the pending family mediation hearings that were to commence on May 16, 2007. The hearings included Plaintiff's demand for 100% legal and physical custody, to which I objected. Several emails supported my opposition to Plaintiff receiving 100% legal and physical custody; they included admissions by Plaintiff of abandonment of my children while she went to India for several weeks; they also disclosed misrepresentations to the court concerning Plaintiff's assets, which had influenced the court's decision to increase my child support substantially.

13.     The emails also included admissions concerning Plaintiff's actions and the actions of Plaintiff's friend which may have caused me to suffer wrongful termination from my position as Executive Director of the Indian Community Center. I recently filed a complaint in Santa Clara County Superior Court, Case No. 108CV111519, including claims of defamation and wrongful termination against Plaintiff and others, based in part on the information revealed by several of the emails I obtained during 2007.

**I NEVER TOLD PLAINTIFF "ALL OF [HER] PRIVATE AND
PERSONAL EMAILS [WERE] POSTED ON THE INTERNET"**

14.     Plaintiff's declaration at pages 4:25-5:1 states as follows:

> "On or about March 24, 2008, Defendant called me to inform me that if I "Googled" my name, I would find all of my private and personal emails posted on the internet. He claimed that it was because my attorneys had filed this lawsuit against him. I spent most of the day and night looking online to see if this was true, and worrying about the ramifications of pursuing this lawsuit."

15.     The foregoing testimony is false. I did not call Plaintiff on March 24, 2008—I called my daughter on her personal cell phone. While I was speaking to my daughter, Plaintiff took my daughter's cell phone to berate me about accessing our joint email account. This phone call occurred several weeks after the Santa Clara County Superior Court, on March 4, 2008, dismissed Plaintiff's second attempt to impose a restraining order on me concerning the emails I accessed in 2007 from our joint email account. [This federal action is Plaintiff's third

attempt to impose a restraining order on me concerning said emails.] I responded to Plaintiff's tirade by informing her that if she "Googled" her name she would see that information concerning this current federal case was on the internet. I did not say to her that "[her] private and personal emails [were] posted on the internet;" nor did I say anything to that effect. I told her that whatever our attorney's filed in court seems to get onto the internet; I also told her that my attorney and I have been very cautious concerning what we say in our court filings; I also suggested to her that she and her attorney should likewise be cautious about what they file in court; otherwise it might be posted on the internet. Attached as Exhibit 2, is a copy of the internet screen which references this Federal case.

16.    Attached as Exhibit 3 is a copy of my phone records during March 20, 2008-April 1, 2008; my daughter's cell phone number is 408.888.9379; my phone records disclose that on March 24, 2008, I never called Plaintiff's cell phone number 408.898.0000; nor did I call her home phone number 408.625.7442. The phone records also show that the March 24, 2008 phone call were made by me to 408.888.9379, my daughter's cell phone.

**PLAINTIFF'S ASSERTION THAT WE SEPARATED IN 1999 IS FALSE;
WE SEPARATED IN JULY 2003**

17.    Plaintiff asserts at page 2:27 of her TRO memorandum that we separated in 1999; this assertion is false. In 1999 we purchased our home in Saratoga, California. During March 2000-July 2001, I took a job in Los Angeles. We decided not to sell our Saratoga home and move to Los Angeles so as not to disrupt our children's school and social life. I commuted to Los Angeles during the week, and spent weekends at home. Plaintiff filed for divorce in July 2002, but we continued to reside in the Saratoga home together until we sold it in July 2003.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that I signed this declaration on May _____, 2008, in _____, California.

_____
DATTAPRASANNA G. NADKARNI

1    attempt to impose a restraining order on me concerning said emails.] I responded to Plaintiff's

2    tirade by informing her that if she "Googled" her name she would see that information

3    concerning this current federal case was on the internet. I did not say to her that "[her] private

4    and personal emails [were] posted on the internet;" nor did I say anything to that effect. I told her

5    that whatever our attorney's filed in court seems to get onto the internet; I also told her that my

6    attorney and I have been very cautious concerning what we say in our court filings; I also

7    suggested to her that she and her attorney should likewise be cautious about what they file in

8    court; otherwise it might be posted on the internet. Attached as Exhibit 2, is a copy of the

9    internet screen which references this Federal case.

10        16.    Attached as Exhibit 3 is a copy of my phone records during March 20, 2008-April

11   1, 2008; my daughter's cell phone number is 408.888.9379; my phone records disclose that on

12   March 24, 2008, I never called Plaintiff's cell phone number 408.898.0000; nor did I call her

13   home phone number 408.625.7442. The phone records also show that the March 24, 2008 phone

14   call were made by me to 408.888.9379, my daughter's cell phone.

15        **PLAINTIFF'S ASSERTION THAT WE SEPARATED IN 1999 IS FALSE;**
          **WE SEPARATED IN JULY 2003**
16

17        17.    Plaintiff asserts at page 2:27 of her TRO memorandum that we separated in 1999;

18   this assertion is false. In 1999 we purchased our home in Saratoga, California. During March

19   2000-July 2001, I took a job in Los Angeles. We decided not to sell our Saratoga home and

20   move to Los Angeles so as not to disrupt our children's school and social life. I commuted to

21   Los Angeles during the week, and spent weekends at home. Plaintiff filed for divorce in July

22   2002, but we continued to reside in the Saratoga home together until we sold it in July 2003.

23        I declare under penalty of perjury under the laws of the State of California that the

24   foregoing is true and correct, and that I signed this declaration on May 22, 2008, in

25   FREMONT_____, California.

26

27

28
          DATTAPRASANNA  NADKARNI

Yahoo! Mail Case 5:07-cv-04834-JF    Document 28    Filed 05/27/2008    Page 28 of 34

Page 1 of 2

# YAHOO! MAIL
### Classic

| | |
|---|---|
| **Date:** | Tue, 12 Nov 2002 14:39:51 -0800 (PST) |
| **From:** | "penmealine" <penmealine@yahoo.com> |
| **Subject:** | Fwd: ▆▆▆▆▆ |
| **To:** | ▆▆▆▆▆▆▆ |

**contacted** ▆▆▆▆▆▆▆

Date: Fri, 14 Jun 2002 18:01:22 -0600
From: ▆▆▆▆▆▆▆▆▆▆
Subject: ▆▆▆▆▆▆
To: penmealine@yahoo.com

▆▆▆▆▆▆▆

TO YOUR PROFILE: "zanymatch"
FROM ▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆ ey

▆▆▆▆▆▆▆▆

▆▆▆▆▆

▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆

▆▆▆▆▆

FROM ▆▆▆▆
TO : ▆▆▆▆
SUBJECT : ▆▆▆▆

EXHIBIT __1__

▆▆▆▆▆▆▆▆▆▆▆▆▆▆

Web    Images    Maps    News    Shopping    Gmail    more ▼

# Google

[ barshana nadkarni ]    Search    Advanced Search
Preferences

Web

**LinkedIn: Darshana Nadkarni**
Darshana Nadkarni's professional profile on LinkedIn. LinkedIn is a networking tool that helps
users like Darshana Nadkarni discover inside connections to ...
www.linkedin.com/in/darshananadkarni - 46k - Cached - Similar pages

**WinningDifference.com: Diversity**
Darshana V. Nadkarni, Ph. D. Doctor of Philosophy - Social Psychology. Emphasis in age
related transitions among men and women. ...
www.winningdifference.com/diversity.html - 37k - Cached - Similar pages

**Nadkarni v. Nadkarni, 5:2007cv04834 - Justia Federal District ...**
Plaintiff: Darshana Nadkarni, Defendant: Dattaprasanna G. Nadkarni. Case Number:
5:2007cv04834, Filed: September 28, 2007 ...
dockets.justia.com/docket/court-candce/case_no-5:2007cv04834/case_id-195970 - 58k -
Cached - Similar pages

**Mitra Radix — Alison Radix - Zoominfo Business People Information**
DARSHANA V. NADKARNI, Aug 29, 2006. TiE (www.tie.org) was founded in 1992. ...
Darshana V. Nadkarni, Ph.D. As president of Winning Difference and a ...
www.zoominfo.com/people/Radix_Alison_420ap2057414p.aspx - 111k - Cached - Similar pages

**India Currents**
Darshana V. Nadkarni, City College of San Francisco. Darshana V. Nadkarni, Ph.D. ...
www.indiacurrents.com/news/view_article.html?article_id=... - Cached - Similar pages

**India Currents**
NRUPAMA V. ABHYANKA THAN, with contributions from Darshana Nadkarni. ...
The first panel Indian Institute of Science (IISC) conference. ...
www.indiacurrents.com/news/view_article.html?... - Cached - Similar pages

**The Parikh Team**
PARIKH team members exemplifying a high commitment to these values include Dr. Darshana
V. Nadkarni, Dr. Christopher King and Mr. Miguel Valentine. ...
www.theparikhteam.com/about_the_team.html - Cached - Similar pages

1 2 3 4 5 6 7 8 9 10 11 12 13 14 15 16 17 18 19 20 21 22 23 24 25

File Format: PDF/Adobe Acrobat - View as HTML
Plaintiff Darshana Nadkarni seeks a temporary restraining order (TRO) against her former
husband, Defendant Dattaprasanna Nadkarni, to prevent him from ...

**nadkarni Search for Reputable Professionals**
nadkarni - Having profiles matching nadkarni ... Darshana Nadkarni, San Francisco Bay -
United States. Owner - RepScore - Level 0, No photo ...
www.reputationdefender.com/results/nadkarni.asp - Cached - Similar pages

Google name search reveals
Denial of her ex-parte TRO
On the very first page!

EXHIBIT ___ 2

Page 1 of 3



**Justia** Federal District Court Filings & Dockets Beta

Justia › Federal District Court Filings › California › California Northern District Court › Other Statutes › Other Statutory Actions › Nadkarni v. Nadkarni

Justia Supreme Court

### Search Federal District Court Filings

Party/Name (optional): Enter Party Name    [Search]

Cases Filed In: - California Northern Federal District Court -

Lawsuit Type: All Lawsuit Types

Show:
- All Case Filings
- Only Case Filings with Downloadable Opinions or Orders

Cases Filed
- All Dates
- Between 1 / Jan / 2004    26 / Nov / 2007

### Nadkarni v. Nadkarni

| | |
|---|---|
| Plaintiff: | Darshana Nadkarni |
| Defendant: | Dattaprasanna G. Nadkarni |
| Case Number: | 5:2007cv04834 |
| Filed: | September 20, 2007 |
| Court: | California Northern District Court |
| Office: | San Jose Office [ Court Info ] |
| County: | Santa Clara |
| Presiding Judge: | Hon. Jeremy Fogel |
| Referring Judge: | Magistrate Judge Richard Seeborg |
| Nature of Suit: | Other Statutes - Other Statutory Actions |
| Cause: | 28:1391 Personal Injury |
| Jurisdiction: | Federal Question |
| Jury Demanded By: | Plaintiff |

**Available Case Documents**
Some selected documents for this case are included below.

**Available Case Documents**
Some selected documents for this case are included below.

| Date Filed | # | Document Text |
|---|---|---|
| September 25, 2007 | 8 | ORDER by Judge Jeremy Fogel denying 3 Motion for TRO. (jf 6, COURT STAFF) (Filed on 9/25/2007) |

**Access additional case information on PACER**
Use the links below to access additional information about this case on the U.S. Court's PACER system. A subscription to PACER is required.

Access this case on the California Northern District Court's Electronic Court Filings (ECF) System.
- Search for Party Aliases
- Associated Cases
- Attorneys
- Case File Location
- Case Summary
- Docket Report
- History/Documents
- Parties
- Related Transactions
- Check Status

**Search for this case: Nadkarni v. Nadkarni**
- Search Blogs   [ Justia BlogSearch | BlogSearch Google Co-op | Bing.com | Bloglines | Feedster | Google BlogSearch | Technorati ]
- Search News   [ Google News | MarketWatch | Wall Street Journal | Financial Times | New York Times ]
- Search Web   [ Legal Web | Google | Bing | Yahoo | Ask ]

**Plaintiff: Darshana Nadkarni**
- Search Dockets   [ Dockets ]
- Search Blogs   [ Justia BlogSearch | BlogSearch Google Co-op | Bing.com | Bloglines | Feedster | Google BlogSearch | Technorati ]
- Search News   [ Google News | MarketWatch | Wall Street Journal | Financial Times | New York Times ]
- Search Finance   [ Google Finance | Yahoo Finance | Hoover's | SEC Edgar Filings ]
- Search Web   [ Legal Web | Google | Bing | Yahoo | Ask ]

**Defendant: Dattaprasanna G. Nadkarni**
- Search Dockets   [ Dockets ]
- Search Blogs   [ Justia BlogSearch | BlogSearch Google Co-op | Bing.com | Bloglines | Feedster | Google BlogSearch | Technorati ]
- Search News   [ Google News | MarketWatch | Wall Street Journal | Financial Times | New York Times ]
- Search Finance   [ Google Finance | Yahoo Finance | Hoover's | SEC Edgar Filings ]
- Search Web   [ Legal Web | Google | Bing | Yahoo | Ask ]

When we click on link All current & Future documents on case May be accessible For ALL to see! This should not be allowed!



NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

DARSHANA NADKARNI,

Plaintiff,

v.

DATTAPRASANNA G. NADKARNI,

Defendant.

Case Number C 07-4834 JF (RS)

ORDER DENYING EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER

[re. doc. no 2]

I. BACKGROUND

Plaintiff Darshana Nadkarni seeks a temporary restraining order ("TRO") against her former husband, Defendant Dattaprasanna Nadkarni, to prevent him from disseminating her private e-mail messages. For reasons set forth below, the motion will be denied.

Plaintiff and Defendant previously were married to each other. On June 21, 2002, Plaintiff filed a state-court petition for dissolution of the marriage. The resulting family law case has been contentious. After the parties separated, Plaintiff established a Yahoo e-mail account, through which she communicated with her attorney and conducted personal and business affairs. Plaintiff alleges that she never gave the password to this account to Defendant nor otherwise

Though it states "Not For Citation" The whole Document Can be viewed and Is downloadable !

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 210 SAT | 03/22/2008 | 7:56PM 510-299-7834 | INCOMING CL | 1 | MME0 | NW | | 0.00 | 0.00 | $0.00 |
| 211 SAT | 03/22/2008 | 8:58PM 408-621-1383 | VMAIL CL | 4 | RM10 | NW | VM | 0.00 | 0.00 | $0.00 |
| 212 SAT | 03/22/2008 | 9:18PM 510-791-6378 | FRNK MAIN CA | 3 | RM10 | NW | | 0.00 | 0.00 | $0.00 |
| 213 SAT | 03/22/2008 | 9:20PM 510-791-6378 | FRNK MAIN CA | 1 | RM10 | NW | | 0.00 | 0.00 | $0.00 |
| 214 SAT | 03/22/2008 | 9:24PM 415-203-2296 | SNFC CNTR CA | 2 | MME0 | NW | M2MC | 0.00 | 0.00 | $0.00 |
| 215 SAT | 03/22/2008 | 9:36PM 9.12224E+11 | INCOMING CL | 4 | RM10 | NW | | 0.00 | 0.00 | $0.00 |
| 216 SAT | 03/22/2008 | 10:14PM 510-791-6378 | INCOMING CL | 17 | RM10 | NW | | 0.00 | 0.00 | $0.00 |
| 217 SUN | 03/23/2008 | 7:18AM 912-224-1506 | INCOMING CL | 3 | RM10 | NW | | 0.00 | 0.00 | $0.00 |
| 218 SUN | 03/23/2008 | 8:28AM 510-299-7834 | INCOMING CL | 21 | MME0 | NW | M2MC | 0.00 | 0.00 | $0.00 |
| 219 SUN | 03/23/2008 | 9:40AM 510-299-7834 | INCOMING CL | 10 | MME0 | NW | M2MC | 0.00 | 0.00 | $0.00 |
| 220 SUN | 03/23/2008 | 10:30AM 510-299-7834 | INCOMING CL | 5 | MME0 | NW | M2MC | 0.00 | 0.00 | $0.00 |
| 221 SUN | 03/23/2008 | 10:35AM 510-299-7834 | INCOMING CL | 6 | MME0 | NW | M2MC | 0.00 | 0.00 | $0.00 |
| 222 SUN | 03/23/2008 | 10:41AM 510-299-7834 | INCOMING CL | 1 | MME0 | NW | M2MC | 0.00 | 0.00 | $0.00 |
| 223 SUN | 03/23/2008 | 11:28AM 510-484-4372 | OKLD ALMD CA | 2 | RM10 | NW | | 0.00 | 0.00 | $0.00 |
| 224 SUN | 03/23/2008 | 12:35PM 510-484-4372 | OKLD ALMD CA | 2 | RM10 | NW | | 0.00 | 0.00 | $0.00 |
| 225 SUN | 03/23/2008 | 12:57PM 510-484-4372 | INCOMING CL | 2 | RM10 | NW | | 0.00 | 0.00 | $0.00 |
| 226 SUN | 03/23/2008 | 1:50PM 510-484-4372 | OKLD ALMD CA | 1 | RM10 | NW | | 0.00 | 0.00 | $0.00 |
| 227 SUN | 03/23/2008 | 1:52PM 510-484-4372 | OKLD ALMD CA | 2 | RM10 | NW | | 0.00 | 0.00 | $0.00 |
| 228 SUN | 03/23/2008 | 2:45PM 510-484-4372 | INCOMING CL | 2 | RM10 | NW | | 0.00 | 0.00 | $0.00 |
| 229 SUN | 03/23/2008 | 9:43PM 9.12224E+11 | INCOMING CL | 2 | RM10 | NW | | 0.00 | 0.00 | $0.00 |
| 230 MON | 03/24/2008 | 7:41AM 9.12224E+11 | INCOMING CL | 9 | RM10 | DT | | 0.00 | 0.00 | $0.00 |
| 231 MON | 03/24/2008 | 8:25AM 9.12224E+11 | INCOMING CL | 2 | RM10 | DT | | 0.00 | 0.00 | $0.00 |
| 232 MON | 03/24/2008 | 8:56AM 415-203-2296 | SNFC CNTR CA | 3 | MME0 | DT | M2MC | 0.00 | 0.00 | $0.00 |
| 233 MON | 03/24/2008 | 10:05AM 201-227-6516 | INCOMING CL | 4 | RM10 | DT | | 0.00 | 0.00 | $0.00 |
| 234 MON | 03/24/2008 | 10:54AM 415-433-6859 | SNFC CNTR CA | 2 | RM10 | DT | | 0.00 | 0.00 | $0.00 |
| 235 MON | 03/24/2008 | 1:47PM 408-621-1383 | VMAIL CL | 1 | RM10 | DT | VM | 0.00 | 0.00 | $0.00 |
| 236 MON | 03/24/2008 | 1:49PM 510-791-6378 | FRNK MAIN CA | 1 | RM10 | DT | | 0.00 | 0.00 | $0.00 |
| 237 MON | 03/24/2008 | 1:49PM 510-299-7834 | FRNK MAIN CA | 2 | MME0 | DT | M2MC | 0.00 | 0.00 | $0.00 |
| 238 MON | 03/24/2008 | 2:25PM 408-888-9379 | INCOMING CL | 2 | MME0 | DT | M2MC | 0.00 | 0.00 | $0.00 |
| 239 MON | 03/24/2008 | 2:54PM 408-888-9379 | SAN JOSE CA | 4 | MME0 | DT | M2MC | 0.00 | 0.00 | $0.00 |
| 240 MON | 03/24/2008 | 3:00PM 510-299-7834 | FRNK MAIN CA | 2 | MME0 | DT | M2MC | 0.00 | 0.00 | $0.00 |
| 241 MON | 03/24/2008 | 3:01PM 510-299-7834 | INCOMING CL | 1 | MME0 | DT | M2MC | 0.00 | 0.00 | $0.00 |
| 242 MON | 03/24/2008 | 3:33PM 408-888-9379 | SAN JOSE CA | 8 | MME0 | DT | M2MC | 0.00 | 0.00 | $0.00 |
| 243 MON | 03/24/2008 | 3:40PM 510-299-7834 | FRNK MAIN CA | 1 | MME0 | DT | | 0.00 | 0.00 | $0.00 |
| 244 MON | 03/24/2008 | 3:42PM 416-723-7550 | TORONTO ON | 1 | RM10 | DT | | 0.00 | 0.20 | $0.20 |
| 245 MON | 03/24/2008 | 3:43PM 905-565-5958 | MALTON ON | 37 | RM10 | DT | | 0.00 | 7.40 | $7.40 |
| 246 MON | 03/24/2008 | 3:58PM 510-299-7834 | CALL WAIT | 1 | MME0 | DT | M2MC | 0.00 | 0.00 | $0.00 |
| 247 MON | 03/24/2008 | 4:16PM 510-299-7834 | CALL WAIT | 2 | MME0 | DT | M2MC | 0.00 | 0.00 | $0.00 |
| 248 MON | 03/24/2008 | 8:22PM 9.12224E+11 | INCOMING CL | 1 | RM10 | DT | | 0.00 | 0.00 | $0.00 |
| 249 MON | 03/24/2008 | 9:27PM 408-621-1383 | INCOMING CL | 3 | RM10 | NW | | 0.00 | 0.00 | $0.00 |
| 250 MON | 03/24/2008 | 10:36PM 510-299-7825 | FRNK MAIN CA | 1 | MME0 | NW | M2MC | 0.00 | 0.00 | $0.00 |
| 251 MON | 03/24/2008 | 11:14PM 510-299-7825 | FRNK MAIN CA | 1 | MME0 | NW | M2MC | 0.00 | 0.00 | $0.00 |
| 252 TUE | 03/25/2008 | 7:25AM 9.12224E+11 | INCOMING CL | 1 | RM10 | DT | | 0.00 | 0.00 | $0.00 |
| 253 TUE | 03/25/2008 | 7:42AM 9.12224E+11 | INCOMING CL | 3 | RM10 | DT | | 0.00 | 0.00 | $0.00 |
| 254 TUE | 03/25/2008 | 9:27AM 510-299-7834 | INCOMING CL | 13 | MME0 | DT | M2MC | 0.00 | 0.00 | $0.00 |
| 255 TUE | 03/25/2008 | 3:14PM 415-203-2296 | SNFC CNTR CA | 1 | MME0 | DT | M2MC | 0.00 | 0.00 | $0.00 |
| 256 TUE | 03/25/2008 | 3:22PM 408-421-5463 | INCOMING CL | 1 | MME0 | DT | M2MC | 0.00 | 0.00 | $0.00 |
| 257 TUE | 03/25/2008 | 5:07PM 510-299-7834 | INCOMING CL | 3 | MME0 | DT | M2MC | 0.00 | 0.00 | $0.00 |
| 258 TUE | 03/25/2008 | 6:07PM 408-421-5463 | INCOMING CL | 1 | MME0 | DT | M2MC | 0.00 | 0.00 | $0.00 |
| 259 TUE | 03/25/2008 | 6:38PM 510-791-6378 | INCOMING CL | 1 | RM10 | DT | | 0.00 | 0.00 | $0.00 |
| 260 TUE | 03/25/2008 | 6:42PM 408-394-1910 | INCOMING CL | 1 | RM10 | DT | | 0.00 | 0.00 | $0.00 |
| 261 TUE | 03/25/2008 | 6:53PM 408-394-1910 | SUNNYVALE CA | 4 | RM10 | DT | | 0.00 | 0.00 | $0.00 |
| 262 TUE | 03/25/2008 | 6:57PM 408-421-5463 | SAN JOSE CA | 1 | MME0 | DT | M2MC | 0.00 | 0.00 | $0.00 |
| 263 TUE | 03/25/2008 | 6:59PM 510-791-6378 | FRNK MAIN CA | 7 | RM10 | DT | | 0.00 | 0.00 | $0.00 |
| 264 TUE | 03/25/2008 | 9:27PM 415-203-2296 | SNFC CNTR CA | 2 | MME0 | NW | M2MC | 0.00 | 0.00 | $0.00 |
| 265 TUE | 03/25/2008 | 9:31PM 415-203-2296 | INCOMING CL | 1 | MME0 | NW | M2MC | 0.00 | 0.00 | $0.00 |
| 266 TUE | 03/25/2008 | 9:36PM 408-621-1383 | INCOMING CL | 3 | RM10 | NW | | 0.00 | 0.00 | $0.00 |
| 267 WED | 03/26/2008 | 5:39AM 912-224-1506 | INCOMING CL | 1 | RM10 | NW | | 0.00 | 0.00 | $0.00 |
| 268 WED | 03/26/2008 | 5:41AM 866-373-5426 | 866 Toll CL | 13 | RM10 | NW | | 0.00 | 0.00 | $0.00 |
| 269 WED | 03/26/2008 | 5:59AM 866-373-5426 | 866 Toll CL | 7 | RM10 | NW | | 0.00 | 0.00 | $0.00 |
| 270 WED | 03/26/2008 | 6:08AM 866-373-5426 | 866 Toll CL | 4 | RM10 | NW | | 0.00 | 0.00 | $0.00 |
| 271 WED | 03/26/2008 | 6:13AM 866-373-5426 | 866 Toll CL | 1 | RM10 | NW | | 0.00 | 0.00 | $0.00 |
| 272 WED | 03/26/2008 | 6:14AM 866-373-5426 | 866 Toll CL | 3 | RM10 | NW | | 0.00 | 0.00 | $0.00 |
| 273 WED | 03/26/2008 | 6:50AM 9.12224E+11 | INCOMING CL | 10 | RM10 | NW | | 0.00 | 0.00 | $0.00 |
| 274 WED | 03/26/2008 | 8:12AM 866-373-5426 | 866 Toll CL | 1 | RM10 | DT | | 0.00 | 0.00 | $0.00 |
| 275 WED | 03/26/2008 | 8:13AM 866-373-5426 | 866 Toll CL | 2 | RM10 | DT | | 0.00 | 0.00 | $0.00 |
| 276 WED | 03/26/2008 | 10:02AM 9.12239E+11 | INCOMING CL | 1 | RM10 | DT | | 0.00 | 0.00 | $0.00 |
| 277 WED | 03/26/2008 | 10:03AM 9.12239E+11 | INCOMING CL | 28 | RM10 | DT | | 0.00 | 0.00 | $0.00 |
| 278 WED | 03/26/2008 | 1:24PM 717-773-4114 | INCOMING CL | 1 | RM10 | DT | | 0.00 | 0.00 | $0.00 |
| 279 WED | 03/26/2008 | 3:34PM 510-299-7834 | FRNK MAIN CA | 1 | MME0 | DT | M2MC | 0.00 | 0.00 | $0.00 |
| 280 WED | 03/26/2008 | 4:24PM 415-398-2296 | SNFC CNTR CA | 19 | RM10 | DT | | 0.00 | 0.00 | $0.00 |
| 281 WED | 03/26/2008 | 4:45PM 415-398-2296 | INCOMING CL | 3 | RM10 | DT | | 0.00 | 0.00 | $0.00 |
| 282 WED | 03/26/2008 | 4:48PM 415-377-2884 | SNFC CNTR CA | 8 | RM10 | DT | | 0.00 | 0.00 | $0.00 |
| 283 WED | 03/26/2008 | 6:12PM 408-621-1383 | INCOMING CL | 1 | RM10 | DT | | 0.00 | 0.00 | $0.00 |



EXHIBIT 3